FILED

2016 Mar-30  AM 09:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **TOWN OF HARPERSVILLE,** ) | |
| **ALABAMA, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | Civil Action Number |
| **vs.** ) | **2:15-cv-00543-AKK** |
| ) | |
| **JUDICIAL CORRECTION** ) | |
| **SERVICES ET AL.,** ) | |
| | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs City of Childersburg, Alabama ("Childersburg"), Town of Harpersville, Alabama ("Harpersville") (collectively, "the municipalities"), and Alabama Municipal Insurance Corporation ("AMIC") (all three collectively, "Plaintiffs") filed this action in state court against Judicial Correction Services, Inc. ("JCS") and Cincinnati Insurance Corporation ("Cincinnati") for breach of contract, indemnity, contribution, and equitable subrogation. *See* doc. 1-1 at 15-21. Plaintiffs also filed claims against Lisha Kidd, Kevin Egan, Sherre Fomby, and Colleen Ray (collectively, "individual defendants") (all defendants collectively, "Defendants") for fraudulent suppression and negligence. *See id.* at 22-25. Despite the presence of the individual defendants who, like Plaintiffs, are citizens of

Alabama, Defendants removed this action from the Circuit Court of Shelby County, Alabama to this court contending that Plaintiffs had fraudulently joined the individual defendants. Doc. 1. The court now has for consideration Plaintiffs' motion for remand and for taxation of costs,[1] doc. 15; JCS's and the individual defendants' motion to dismiss, doc. 13; and Cincinnati's motion to dismiss, doc. 16.[2] These motions are fully briefed and ripe for review. Docs. 13, 15, 16, 22, 23, 24, 25, 26, 27.

## I.    FACTUAL ALLEGATIONS

In 2005 JCS, a private collections agency, entered into contracts[3] with the plaintiff municipalities to supervise all probation cases for the municipal courts of each municipality. Doc. 1-1 at 11. As part of these contracts, JCS agreed to "comply with all provisions of state and federal law" and to charge each probationer a "probation fee of $35.00 per month flat fee." *See* docs. 1-1 at 15; 1-2 at 3-4; 1-3 at 3, 5. Additionally, in the Harpersville-JCS contract, JCS committed

---

[1] The court **GRANTS** Plaintiffs' motion to amend and substitute Exhibit C, doc. 18, in their original motion to remand, doc. 15.

[2] Cincinnati initially filed a motion to dismiss and supporting brief on April 20, 2015, doc. 12, but re-submitted an identical motion and supporting brief in a larger font size on April 21, 2015, doc. 16. Therefore, Cincinnati's original motion, doc. 12, is **DENIED AS MOOT**.

[3] The court may properly consider the JCS contracts, underlying complaints, and the JCS-Cincinnati insurance policy on this motion to dismiss without converting Defendants' motions into motions for summary judgment because they are referred to in the complaint and are "central to . . . Plaintiff[s'] claim." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

to "execute an indemnity agreement holding the City of Harpersville harmless for the acts of JCS employees." Doc. 1-2 at 3.

In October 2010, Harpersville was named as a defendant with JCS and others in a putative class action arising from the probation collection practices there.[4] Docs. 1-1 at 11-12; 13-1. In August 2012, Childersburg and JCS, among others, were also sued in a separate putative class action suit stemming from that municipality's collection practices.[5] Docs. 1-1 at 13-14; 13-2. Both lawsuits allege that the municipalities, JCS, and others violated the plaintiffs' civil rights by generally propagating a scheme whereby the defendants disregarded the plaintiffs' indigent status and imposed fines and incarceration in violation of law. *See generally Burdette*, CV-2010-900183; *Ray*, 2:12-cv-2819-RDP. As a result of these underlying lawsuits, AMIC—the insurer for both Harpersville and Childersburg—is defending the municipalities, while Cincinnati is defending JCS. Doc. 1-1 at 12-13. Cincinnati's insurance policy with JCS ran from September 27, 2008 to September 27, 2011.[6] *See generally* docs. 16-3 and 16-4. Notwithstanding

---

[4] The Harpersville case, *Burdette v. Town of Harpersville*, CV-2010-900183, is in the Circuit Court of Shelby County, Alabama. The court in its rulings on this case has considered the Third Amended Complaint, filed on July 17, 2012.

[5] The Childersburg case, styled *Ray v. City of Childersburg*, 2:12-cv-2819-RDP, is pending in the Northern District of Alabama. The court in its rulings on this case has considered the Fourth Amended Complaint, filed on February 1, 2016.

[6] Plaintiffs also assert that, in the underlying Childersburg case, JCS produced another insurance policy with Cincinnati running from August 27, 2010 to August 27, 2011. *See* doc. 23 at 5.

Plaintiffs' requests for "defense and indemnification," neither JCS nor Cincinnati have defended or indemnified AMIC, Harpersville, or Childersburg. *Id.* at 13.

In light of these underlying lawsuits, Plaintiffs have filed this lawsuit against JCS and Cincinnati for breach of contract, bad faith, contribution, equitable subrogation, and indemnification. *Id.* at 15-21. Plaintiffs also allege claims of fraudulent suppression and negligence against the individual defendants, all of whom are residents of Alabama, because these four JCS agents purportedly described themselves as "probation officers" instead of as "private probation officers," used their badges to convey the look of agents of the municipal governments, and failed to keep accurate probationer records. Doc. 1-1 at 15, 22-24.

## II.   MOTION FOR REMAND AND FOR TAXATION OF COSTS (Doc. 15)

As mentioned above, Plaintiffs originally filed this suit in the Circuit Court of Shelby County, Alabama. *See generally* docs. 1; 1-1. Plaintiffs have moved to remand the case back to Shelby County, contending that the four individual defendants, all of whom are citizens of Alabama, destroy diversity. *See* doc. 15 at 6-13. Plaintiffs also seek an award of attorneys' fees. *See id.* at 13-14. For the reasons stated below, the court agrees with Defendants that Plaintiffs fail to state colorable claims under state law against the non-diverse defendants. Accordingly,

Plaintiffs' motion to remand and their request for attorneys' fees are **DENIED**. Furthermore, in light of the court's finding that Plaintiffs have fraudulently joined the non-diverse individual defendants, the individual defendants' motion to dismiss, doc. 13, is **GRANTED** insofar as it relates to their presence in this suit.

### a.  Standard of Review

As courts of limited jurisdiction, federal courts must "construe removal statutes narrowly." *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1329 (11th Cir. 2006). "In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." *Crowe v. Coleman.*, 113 F.3d 1536, 1542 (11th Cir. 1997). Though the court may go beyond the face of the complaint to determine the validity of a claim, the court may not go so far as to weigh the merits of those claims which are not obviously frivolous. *Id.* "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Crowe*, 113 F.3d at 1538. Given the plaintiff's remarkably light burden, "any ambiguity or doubt about the substantive state law favors remand to state court." *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1299 (11th Cir. 2007).

### b. Analysis

Defendants contend that Plaintiffs have fraudulently joined the four individual defendants because: (i) Plaintiffs' claims against them are barred by the two-year statute of limitations, docs. 22 at 7-9; 24 at 11-13; (ii) Plaintiffs cannot point to a non-contractual duty owed by these four that could serve as a basis for negligence liability, doc. 22 at 3-6; and (iii) Plaintiffs' claims are merely an attempt to gain an impermissible contribution from a joint tortfeasor. Doc. 22 at 6-7. A defendant seeking to prove fraudulent joinder must do so by "clear and convincing evidence." *Henderson v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). Though the defendant's burden is a heavy one, the reviewing court must also weigh the consideration that "[t]he removal process was created by Congress to protect defendants. Congress did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it." *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005) (citations omitted). Thus, when it is clear that all claims stated against the non-diverse defendants fail as a matter of law, the court must deny the motion to remand. With this general framework in mind, the court turns next to the three arguments Defendants raise in support of their fraudulent joinder contention.

### i. Statute of Limitations Defense

The individual defendants' first argument is based on the statute of limitations. Indeed, the law is clear that a plaintiff has fraudulently joined a defendant if the only colorable claims against that non-diverse defendant are time-barred. *See Whitlock v. Jackson Nat'l Life Ins. Co.* 32 F. Supp. 2d 1286, 1290 (M.D. Ala. 1998). Under Alabama law, an action accrues "when the first injury, however slight, occurr[ed], even though that injury may [have] later become greater or different." *Free v. Granger*, 887 F.2d 1552, 1556–57 (11th Cir. 1989). Relevant here, Plaintiffs assert that their claims are continuous torts. Doc. 15 at 9. A continuous tort describes "a defendant's repeated tortious conduct which has repeatedly and continuously injured a plaintiff. These cases can be analyzed by analogizing the plaintiffs' cause of action to the common law action of continuing trespass or trespass on the case." *Moon v. Harco*, 435 So. 2d 218, 220 (Ala. 1983). Consequently, "'continuous torts' may toll the Alabama statutes of limitations." *Evans v. Walter Indus., Inc.*, 579 F. Supp. 2d 1349, 1367 (N.D. Ala. 2008) (relying on *Moon*, 435 So. 2d at 221).

### 1. Suppression as a Continuing Tort

"Fraudulent suppression has an inherent element of continuity," *Oswald v. Metro. Life Ins. Co.* 968 F. Supp. 639, 646 (M.D. Ala. 1997), because "the essence

of a defendant's tortious conduct is an omission. Until the defendant remedies this omission by revealing the non-disclosed material facts, the defendant continues to act in a tortious manner." *Id.* (relying on *Mason v. Chrysler Corp.*, 653 So. 2d 951 (Ala. 1995)). However, the cause of action begins to accrue upon "the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." Ala. Code § 6-2-3; *see also Gray v. Liberty Nat. Life Ins. Co.*, 623 So. 2d 1156, 1159 (Ala. 1993) (stating that a fraud claim accrues at the time of the discovery by the aggrieved party of the fact constituting the fraud). Moreover, knowledge can be actual or constructive. "[A] party will be deemed to have 'discovered' a fraud as a matter of law upon the first of either the actual discovery of the fraud or when the party becomes privy to facts that would provoke inquiry in a reasonable person that, if followed up, would lead to the discovery of the fraud." *Dickinson v. Land Developers Const. Co., Inc.*, 882 So. 2d 291, 298 (Ala. 2003); *Jones v. Kassouf & Co., P.C.*, 949 So. 2d 136, 140 (Ala. 2006) (same).

Here, the complaints filed against JCS and the municipalities in October 2010 and August 2012 placed Plaintiffs on actual notice of the facts they claim the individual defendants suppressed. More specifically, the lawsuits against the municipalities and JCS allege that, after meeting certain minimal requirements, "JCS employees are then labeled 'Probation Officers' and [are] permitted to carry

the JCS issued badge in collecting its fees, court fines and costs." Doc. 1-10 at 5.
The filing dates of these two lawsuits therefore triggered the statute of limitations
for this tort, as the lawsuits placed Plaintiffs on notice of the purported
suppression—as the lawsuits would have "provoked inquiry" for any reasonable
person—even if JCS and its agents did not disclose the material facts alleged.
Despite being placed on notice of the facts that were purportedly injuring plaintiffs
in the underlying suits, Harpersville waited nearly five years and Childersburg
waited more than two years before bringing this action. Because Alabama law
requires a party to commence an action for wrongful omission within two years,
Plaintiffs' suppression claims are time barred. *See* Ala. Code 1975 § 6-2-38(a).

## 2.  Negligence as a Continuing Tort

Plaintiffs also allege that the individual defendants engaged in repeated
tortious conduct by continuing to identify themselves as probation officers and by
using badges designed to make the individual defendants resemble government
agents as opposed to private contractors. *See* doc. 27 at 4. Under Alabama law,
continuing trespass is the appropriate analogy for a continuing tort, *see Moon*, 435
So. 2d at 220, and cases discussing continuous trespass distinguish between
completed actions that cause an ongoing injury, *see e.g.*, *Webb v. Knology, Inc.*,
164 So. 3d 613, 617-18 (Ala. Civ. App. 2014), and repeated tortious actions that
give rise to new actionable injuries, *see e.g.*, *Baugus v. City of Florence*, 985 So.

2d 413, 421 (Ala. 2007). In making this distinction, Alabama courts seem to follow

the general principle described by the Eleventh Circuit in *Winn-Dixie Stores, Inc.*

*v. Dolgencorp, LLC*:

> The continuing tort doctrine, or the continuing violation principle, distinguishes between a single act that causes multiple, cascading harms, and recurrent, repetitive acts excepted from the running of the statute of limitations: A continuing tort is established by continual tortious *acts*, not by continual harmful effects from an original, completed act.

746 F.3d 1008, 1042 (11th Cir. 2014) (emphasis in original) (citations and internal

quotations omitted). In this case, when compared to the established categories of

continuing trespass, the alleged conduct is more akin to the repeated tortious acts

and omissions than it is to a one-time action that continues to cause harm. *See*

*Webb*, 164 So. 3d at 617-18. Consequently, provided that the individual defendants

are subject to a duty, *see Armstrong Bus. Serv., Inc. v. AmSouth Bank*, 817 So. 2d

665, 679 (Ala. 2001) ("The elements of a negligence claim are a duty, a breach of

that duty, causation, and damage."), Plaintiffs' claims for negligence would begin

to accrue every time JCS's pattern of tortious conduct inflicted an injury, *see*

*Baugus*, 985 So. 2d at 421.

### ii.  Question of Duty

The second argument the individual defendants raise centers on whether

Plaintiffs can establish that the individual defendants owed Plaintiffs a duty that is

not contractually based. Whether a duty exists is a legal question. *State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 839 (Ala. 1998). When a party breaches a duty arising from a contract, the remedy lies in the law of contract and not in tort. *Blake v. Bank of Am., N.A.*, 845 F. Supp. 2d 1206, 1210 (M.D. Ala. 2012) (relying on *Vines v. Crescent Transit Co.*, 85 So. 2d 436, 440 (1956)); *see also Barber v. Bus. Prods. Ctr.*, 677 So. 2d 223, 228 (Ala. 1996) ("[A] mere failure to perform a contractual obligation is not a tort."). While an action for breach can only be maintained ex contractu, Alabama law does recognize that some duties "aris[e] by implication of law from the relation of the parties created by the contract," and that when a party sues another with whom it has a contract "the action may be either in contract or tort." *See, e.g.*, *Hamner v. Mut. of Omaha Ins., Co.*, 270 So. 2d 87, 90 (Ala. Civ. App. 1972). However, the relationships that implicate a special duty incidental to the contract are typically confidential or fiduciary, *see, e.g.*, *Williams v. Williams*, 497 So. 2d 481, 483 (Ala. 1986) (holding that when the parties shared a fiduciary relationship, that a duty "to act with due regard to the interest of the principal" was fairly implied), and do not arise from arm's-length transactions such as those between Plaintiffs and the individual defendants.

## 1. Individual Defendants' Duty to Properly Identify Themselves

Whether the individual defendants identified themselves as private probation officers or used misleading badges both relate to the individual defendants' duty to

properly identify themselves. As Plaintiffs acknowledge, *see* doc. 15 at 4-5, 12, the source of the individual defendants' duty is in the language of the contract. Although there may be collateral duties implied in the contract to act with due care, the court must look to the face of the complaint and to the established facts in order to determine the gravamen of the complaint and to locate the source of the alleged duty. *See, e.g.*, *Hamner*, 270 So. 2d at 90 ("[W]hether the action declared is in tort or contract must be determined from the gist or gravamen of the complaint."); *Citizens Bank & Trust v. LPS Nat'l Flood LLC.*, 51 F. Supp. 3d. 1157, 1170-71 (N.D. Ala. 2014) (applying *Hamner*). In that regard, the complaint here centers on the individual defendants' failure to identify themselves as "private" probation officers—a requirement Plaintiffs claim is expressly stated in the terms of the contracts. *See* docs. 1-1 at 23-25; 1-2 at 2; 1-3 at 3; 15 at 12. Similarly, while neither party cites an explicit reference to badges in the contract, the officers' duty to identify themselves properly must arise under the contract, as no such general duty of care would otherwise exist. Thus, while Plaintiffs may pursue an action on the contract, they cannot sustain an action against the individual defendants for negligence that is independent of the contract.

### 2.  Duty to Keep Probationer Records

Because the need for record-keeping springs solely from the contract, the individual defendants' alleged failure to keep actual probationer records is also

best viewed as a breach of a contractual duty rather than a general duty. While Plaintiffs may take issue with the carelessness of the individual defendants, such alleged carelessness could only have breached a contractual duty. *See, e.g.*, *Blake*, 845 F. Supp. 2d at 1210-11. Because a "plaintiff can only sue in tort when a defendant breaches the duty of reasonable care—the duty one owes to another in his day-to-day affairs—when such a breach causes personal injury or property damage," *id.* at 1210 (citing *Vines*, 85 So. 2d at 440), Plaintiffs simply cannot pursue their negligence claims against the individual defendants where, as here, none of the allegations of negligence are supported by non-contractual duties. Since a breach of duty is the foundation of a negligence claim, *see id.*, the lack of a non-contractual duty dooms Plaintiffs' negligence claims even if they are not time barred.[7]

The court recognizes that a plaintiff's burden is light on a motion for remand. Nonetheless, where, as here, Plaintiffs' allegations fail to state a claim under governing state law, the unavoidable conclusion is that Plaintiffs fraudulently joined the non-diverse individual defendants. The court reaches this conclusion because Plaintiffs had notice of the allegedly suppressed facts well

---

[7] Because the foregoing issues are dispositive of whether Plaintiffs can state a colorable claim under state law, the court will not address the question of what effect the prohibition on contribution between joint tortfeasors has on Plaintiffs' claims.

outside of Alabama's two-year statute of limitations and because, as a matter of law, their negligence claims fail for want of a non-contractual duty.

### III.   MOTIONS TO DISMISS BY JCS AND CINCINNATI (Docs. 13 and 16)

As mentioned above, both JCS[8] and Cincinnati have filed motions to dismiss the claims against them. Docs. 13 and 16.

### a.  Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

---

[8] Although JCS's motion to dismiss also addresses arguments regarding the claims against the individual defendants, doc. 13, the arguments related to them are moot in light of the court's finding that the individual defendants were fraudulently joined.

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations omitted) (internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id*.; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### b.  JCS's Motion to Dismiss (Doc. 13)

JCS argues that it is entitled to absolute quasi-judicial immunity and that all claims against it should be dismissed for failure to state a claim. *See generally* docs. 13 and 26. After careful review, the court concludes that JCS' motion is due to be **GRANTED IN PART**.

### i.  Absolute Quasi-Judicial Immunity

JCS asserts that, as a private corporation engaging in quasi-judicial functions under the direct supervision of the municipal courts in Childersburg and Harpersville, it is entitled to absolute quasi-judicial immunity because "[q]uasi-judicial immunity extends to court-appointed persons, who are not judges, when acting within the scope of their authority and their official duties have an integral relationship with the judicial process." *See* doc. 13 at 31-33. Although the court doubts that JCS employees are entitled to immunity under 42 U.S.C. § 1983 given that the Supreme Court's has denied qualified immunity to employees of private prison management firms, *see Richardson v. McKnight*, 521 U.S. 399 (1997), even if JCS were entitled to immunity, any such immunity would not extend to the administrative activities at issue in this suit, *cf. Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (noting that "absolute immunity may not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in . . . investigative or administrative tasks"). The actions at issue in this case (namely, whether JCS complied with its contracts with Harpersville and Childersburg and whether JCS should be required to indemnify the municipalities) are garden-variety administrative activities not traditionally entitled to immunity. Additionally, absolute quasi-judicial immunity applies only when an entity acts "within the scope of [its] authority," *see Roland v. Phillips*, 19 F.3d 552, 555 (11th

Cir. 1994)—and whether JCS acted within the scope of its authority is at the heart of Plaintiffs' allegations here. Therefore, the court declines to dismiss this case on immunity grounds.

### ii. Count One: Breach of Contract

Plaintiffs assert a breach of contract claim against JCS for its alleged violation of the terms of the Harpersville-JCS and Childersburg-JCS contracts. *See* doc. 1-1 at 15-16. Plaintiffs' claim is based upon two clauses: (1) that JCS agreed to "comply with all provisions of state and federal law;" and (2) that JCS agreed to "only charge each probationer a 'probation fee of $35 per month flat fee.'" *See* docs. 1-1 at 11-13, 15-16; 1-2 at 3-4; 1-3 at 3, 5.

In Alabama, claims for breach of contract are subject to a six-year statute of limitations. Ala. Code § 6-2-34. "The statute of limitations begins to run when a cause of action on the contract accrues, which is to say when the contract is breached." *Sebold v. Magnolia Land Co.*, 376 So. 2d 1083, 1085 (Ala. 1979); *see AC, Inc. v. Baker*, 622 So. 2d 331, 333 (Ala. 1993) ("Th[e] six-year period begins to run when the contract is breached."); *Snider v. Morgan*, 113 So. 3d 643, 651 (Ala. 2012) ("A suit on a breach-of-contract claim . . . may be commenced as soon as the defendant breaches the contract, regardless of whether the plaintiff has suffered an actual injury.") (citations and quotations omitted). Moreover, "[a] Rule

12(b)(6) dismissal on statute of limitations grounds is appropriate 'if it is apparent from the face of the complaint that the claim is time-barred.'" *See, e.g.*, *Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)). Indeed, "[a]t the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense *only if* it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n.13 (11th Cir. 2005) (emphasis added) (internal quotation marks and citation omitted).

### 1.  The Municipalities' Breach of Contract Claims

JCS argues that the municipalities' breach of contract claims are barred by the statute of limitations because the alleged breaches occurred more than six years before Plaintiffs filed this suit. *See* doc. 13 at 8-11. In support of this argument, JCS points to the allegations in the underlying complaints in this action, *see* Third Amended Complaint, *Burdette*, CV-2010-900183 (Shelby Cty. Cir. Ct. July 17, 2012); Fourth Amended and Restated Complaint, *Ray*, 2:12-cv-2819-RDP (N.D. Ala. Feb. 1. 2016), as proof that the alleged breaches occurred, if at all, more than six years before the filing of this lawsuit. *See* doc. 1-1 at 9. Taking the allegations in the underlying complaints as true for the purposes of this breach of contract claim, the court agrees with Plaintiffs that dismissal here is inappropriate.

As a threshold matter, the mere fact that the plaintiffs in the underlying suits make allegations as to any facts that occurred more than six years prior (such as, for instance, that a plaintiff was arrested in 2007) is not enough to show that a breach of contract occurred more than six years prior to the municipalities' lawsuit. However, even a close reading of the complaints does not reveal on "the face of the complaint" that the statute of limitations has run. *See Gonsalvez*, 358 F.3d at 845.

### a.  Harpersville

The court is unpersuaded by JCS's statute of limitations argument regarding Harpersville's claim that JCS violated the contract clause obligating the company to "comply with all provisions of state and federal law." The plaintiffs in the underlying Harpersville action assert that a named plaintiff was enrolled in court-ordered rehabilitation programs between November 2007 and November 2008 but that "[a]fter completing her court-ordered programs," the plaintiff was "soon arrested" and subjected to various alleged constitutional violations. Third Amended Complaint at 8, *Burdette*, CV-2010-900183. The complaint here fails to detail when precisely the various constitutional violations occurred or to detail any facts other than the November 2008 date when the plaintiff was enrolled in a court-ordered rehabilitation program. *See id.* There is nothing before this court regarding how "soon" after the completion of the rehabilitation program that the plaintiff was

arrested. To find that the claims are barred by the statute of limitations, the court would have to side with Defendants' contentions regarding the timeline. The court declines to do so at this juncture. Instead, construing the facts in the light most favorable to the plaintiff municipalities, the court infers for purposes of this motion to dismiss that the alleged constitutional violations did not occur until after February 18, 2009—the date six years prior to the filing of the municipalities' lawsuit and only three months after the completion of this plaintiffs' court-appointed programming.

Another plaintiff in the underlying Harpersville suit was ticketed in November 2006 and "[d]espite her inability to pay, she was fined and ordered to pay certain probation fees to ensure collection of these fines;" however, when the plaintiff failed to make payments, "in May 2009, she was arrested" by Harpersville, JCS, and others, after which various alleged constitutional violations occurred. *See id.* at 9. Again, JCS fails to show "beyond a doubt" that "no set of facts" toll the statute here. Indeed, the underlying Harpersville complaint does not allege that JCS imposed the fees in 2006 (as opposed to in May 2009, within the statute of limitations period) and instead alleges generally that they were imposed by all defendants in the action—which includes Harpersville, JCS, and various

other municipal actors.[9] With such broad allegations, the court declines to find that JCS's statute of limitations defense inevitably arises from the face of the underlying Harpersville complaint.

### b. Childersburg

The court similarly finds that the statute of limitations violation is not apparent from the face of the complaint with respect to Childersburg's claim that JCS violated the contract term prohibiting JCS from charging more than $35 per month. Indeed, JCS points to the allegations regarding a plaintiff named Deuante T. Jews to argue that the statute of limitations has run; however, the Fourth Amended Complaint of the underlying Childersburg suit belies this argument. It reads in relevant part:

> Mr. . . . Jews . . . was charged in 2008 . . . [for] harassment. Mr. Jews was never tried . . . . As a result, the charges against Mr. Jews were dismissed but, on October 22, 2009, he was nonetheless charged court costs of $166 and since he could not pay this amount, he was placed on probation with JCS for 24 months for payment with the addition requirement that he also pay JCS $45 per month.

---

[9] The underlying Harpersville complaint also alleges that "[o]n . . . July 22, 2008, without the benefit of legal counsel, any formal probation revocation hearing, notice of the charge of delinquency, or any hearing on the issue of indigency, [another plaintiff's] probation was revoked and he was incarcerated based on his inability to pay these [fees]." Third Amended Complaint at 6, *Burdette*, CV-2010-900183. However, the underlying complaint only generally blames all defendants in the action for this outcome, which the court cannot determine "beyond a doubt" included JCS.

Fourth Amended and Restated Complaint at 18, *Ray*, 2:12-cv-2819-RDP. Taking these facts as true, then, JCS did not impose the $45 monthly fee until October 2009—well within the six-year statute of limitations period. As such, these allegations fall short of establishing that "no set of facts" could toll the statute.

Therefore, for the reasons outlined above, JCS's argument that the municipalities' breach of contract claims are due to be dismissed on statute of limitations grounds cannot succeed. At this early stage, the court cannot find "without a doubt" that the municipalities "can prove no set of facts" that fall within the applicable six-year breach of contract period.

## 2.  AMIC's Breach of Contract Claim

AMIC also advances against JCS a claim "as subrogee of both [municipalities]" for breach of contract, *see* doc. 1-1 at 15-16, which JCS moves to dismiss on the basis that AMIC lacks standing to bring such a claim and that AMIC only claims payment of "essentially legal fees."  *See* docs. 13 at 7-8; 26 at 6. AMIC argues that JCS has "wrongly attempt[ed] to distinguish legal fees from judgment owed in the context of indemnity." *See* doc. 25 at 14-15. Because the court finds that AMIC cannot stand as a subrogee for this action, AMIC's claim is due to be dismissed.

AMIC's claim misunderstands the principles underpinning equitable subrogation. "Subrogation is an equitable doctrine intended to prevent the insured from recovering twice for a single injury and to reimburse the insurer for payments it made that should, in fairness, be borne by another." *Int'l Underwriters/Brokers, Inc. v. Liao*, 548 So. 2d 163, 164 (Ala. 1989). To assume the place of a subrogee, Alabama requires that:

> [(1)] money is advanced at the instance of the debtor in order to extinguish a prior [e]ncumbrance; (2) the money is used for that purpose with the just expectation on the part of the lender for obtaining security of equal dignity with the prior [e]ncumbrance; (3) the whole debt must be paid before subrogation can be enforced; (4) the lender must be ignorant of the intervening lien; and (5) the intervening lienor must not be burdened or embarrassed.

*Ex parte Lawson*, 6 So. 3d 7, 12 (Ala. 2008) (citations and internal quotation marks omitted). Here, the municipalities have filed run-of-the-mill breach of contract claims seeking compensation from JCS's alleged violation of their contract obligations to follow state and federal law and to charge a monthly fee of only $35. This claim, then, is not one in which the municipalities run the risk of "recovering twice" for the breaches, nor where AMIC—without a showing that AMIC is contractually obligated to pursue breach of contract actions on the municipalities' behalf, which AMIC has not pleaded—is entitled to "reimburse[ment] . . . for payments . . . that should, in fairness, be borne by another." *See Liao*, 548 So. 2d at 164. Indeed, the municipalities seek damages from the breach of their contract and

no more. Therefore, because on the facts as pleaded in Plaintiffs' complaint AMIC has failed to establish this breach of contract claim falls within the purview of equitable subrogation, this claim is due to be dismissed.

### iii.  Count Two: Breach of Contract

Harpersville and AMIC bring an additional breach of contract claim against JCS for its alleged failure to comply with the following clause in the Harpersville-JCS contract: "JCS shall also execute an indemnity agreement holding the City of Harpersville harmless for the acts of the JCS employees." *See* docs. 1-1 at 16-17; 1-2 at 3. The court finds that this claim is due to be dismissed.

### 1.  Harpersville's Claim

At issue here is JCS's alleged nonperformance of its promise to execute an indemnity agreement holding Harpersville harmless for JCS's actions. JCS argues that the statute of limitations has run on this claim, seemingly because the contract was signed in 2005. *See* doc. 13 at 8-11. The court agrees that this claim should be dismissed, albeit on different grounds than JCS advances.[10]

---

[10] If the court had determined that the clause imposed a binding obligation on JCS, JCS's statute of limitations argument would not provide grounds for dismissal. As mentioned above, "[t]he [six-year] statute of limitations begins to run when a cause of action on the contract accrues, which is to say when the contract is breached." *Seybold*, 376 So. 2d at 1085.  The clause at issue does not specify a time period in which JCS would have been obligated to execute this agreement. *See* doc. 1-2 at 3. In Alabama, "where a contractual obligation to perform exists, and no time is prescribed in the contract for performance, the law requires the obligated party to

To advance a successful breach of contract claim, a plaintiff must show, inter alia, "the existence of a valid contract binding the parties in the action." *See, e.g.*, *Ex parte Ala. Mut. Ins. Co.*, 799 So. 2d 957, 962 (Ala. 2001). Harpersville argues that the clause at issue binds JCS to executing at some future time an agreement holding Harpersville harmless for JCS's actions. *See* docs. 25 at 13; 1-2 at 3. As JCS notes elsewhere in its brief, this clause is a quintessential agreement to agree. *See* doc. 13 at 15-20. In Alabama, "an agreement to agree is generally unenforceable" unless the agreement is "'definite and certain in all of its terms and conditions so that the court can know what the parties agreed upon.'" *Hurts v. Cook*, 981 So. 2d 1143, 1154 (Ala. Civ. App. 2007) (quoting *Muscle Shoals Aviation, Inc. v. Muscle Shoals Airport Auth.*, 508 So. 2d 225, 226 (Ala. 1987)). Indeed, "an agreement that [parties] will in the future make such contract as they may then agree upon amounts to nothing . . . and cannot be made the basis of a cause of action." *Muscle Shoals Aviation, Inc.*, 508 So. 2d at 227 (internal quotations and citations omitted). Applying this law, the court finds that the agreement to agree in the Harpersville-JCS contract lacks the "definite and certain" terms necessary to be enforceable. *See id.*; *see also* doc. 1-2 at 3. For example, the clause does not limit the breadth of actions to be indemnified (including whether

---

perform within a 'reasonable time.'" *Lemon v. Golf Terrace Owners Ass'n*, 611 So. 2d 263, 265 (Ala. 1992). "What is a reasonable time depends on the nature of the act to be done and all of the circumstances relating to that act. This, necessarily, is a question to be determined by the trier of fact." *Id.* (citing *Hendrix, Mohr & Yardley, Inc. v. City of Daphne*, 359 So. 2d 792 (Ala. 1978)). This determination would therefore not be ripe for consideration at the motion to dismiss stage.

the "acts of JCS employees" included activities beyond the scope of their employment), the financial cap of the indemnification, the timeframe of indemnification, or other, similarly important, terms. Such vague promises as those in this contract cannot create an enforceable contract upon which Harpersville can find relief. *See Holcim (US), Inc. v. Ohio Cas. Ins. Co.*, 38 So. 3d 722, 726 (Ala. 2009) (holding that indemnity agreements will be enforceable only when "the parties knowingly, evenhandedly, and for valid consideration, intelligently enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language") (citation and internal quotation marks omitted).

Therefore, because a breach of contract claim cannot lie in the absence of an enforceable agreement, Harpersville's claim here is due to be dismissed.

## 2. AMIC's Claim

AMIC "as subrogee" also asserts a breach of contract claim against JCS for its purported failure to execute an indemnity contract pursuant to this same clause of the Harpersville-JCS agreement, *see* doc. 1-1 at 16-17, which JCS moves to dismiss for lack of standing, doc. 13 at 7. The court agrees. Because AMIC as a subrogee "steps into the shoes of its subrogor and . . . only gets those rights that its subrogor has," *see Trott v. Brinks, Inc.,* 972 So. 2d 81, 87 (Ala. 2007), it cannot

assert a claim that Harpersville, its subrogor, likewise cannot assert. *See id.* at 87 (holding that, because medical expenses were not recoverable by a widow in a wrongful-death action, the subrogee insurance company could not recover such expenditures, either). Therefore, because Harpersville's breach of contract claim cannot lie here, AMIC's claim against JCS must also be dismissed.

### iv.  Count Five: Contribution

AMIC, presumably as a subrogee, has also asserted a claim against both JCS and Cincinnati for contribution to reimburse the insurance company for its payments to the municipalities for a potential judgment in the underlying cases and for the cost of defense against these claims. *See* doc. 1-1 at 19-20. However, AMIC has not specifically pleaded that AMIC has fully compensated the municipalities for their defense costs or for judgments against them in the underlying cases; as such, AMIC has not satisfied the rule in Alabama that a putative subrogee is not entitled to recover absent full recovery by the insured. *See, e.g.*, *Liao*, 548 So. 2d at 165. This rule applies "except with the contract [between the insured and the insurer] provides otherwise;" however, "*[i]n the absence of express terms to the contrary, the insured is entitled to be made whole before the insurer may recover any portion of the recovery from the tortfeasor*." *Id.* (emphasis in original) (internal quotations and citations omitted). AMIC has not included its insurance agreements with the municipalities in either its complaint or its briefing on the motion to

dismiss. Therefore, in absence of express contract language to the contrary or an affirmative pleading that the municipalities have been entirely compensated for their defense costs, AMIC cannot assert a claim in the capacity as subrogee for contribution against JCS.

### v.  Count Six: Equitable Subrogation

AMIC has also brought a claim against JCS for equitable subrogation for what seems to be reimbursement for the costs of defending the municipalities. *See* doc. 1-1 at 20; *see generally* Third Amended Complaint, *Burdette*, CV-2010-900183; Fourth Amended and Restated Complaint, *Ray*, 2:12-cv-2819-RDP. JCS has moved to dismiss AMIC's claim because JCS is not contractually obligated to provide subrogation here and because this claim is "[m]erely a [r]estatement of [p]laintiffs' [c]laims of [c]ontribution and [i]ndemnity." *See* doc. 13 at 12-15. AMIC has not responded to JCS's motion to dismiss on this claim, nor has it provided additional reasoning as to why the court should not dismiss this claim. Because AMIC has abandoned its equitable subrogation claim against JCS, the claim is due to be dismissed on this ground alone. *See OMV Assocs. Ltd. P'ship v. TriMont Real Estate Advisors, Inc.*, 484 F. App'x 299, 305 (11th Cir. 2012) ("District courts are under no obligation to distill every potential argument in favor of a counseled party's position.") (relying on *Resolution Trust Corp. v. Dunmar Corp.*, 43 F. 3d 587, 599 (11th Cir. 1995) (en banc)); *Collins v. Davol, Inc.*, 56 F.

Supp. 3d 1222, 1228 (N.D. Ala. 2014) (finding that, because the plaintiffs had failed to respond to the defendants' argument to a particular claim in their motion to dismiss, the plaintiffs' claim was abandoned).

Alternatively, the claim fails because "[s]ubrogation is an equitable doctrine intended to prevent the insured from recovering twice for a single injury and to reimburse the insurer for payments it made that should, in fairness, be borne by another." *Liao*, 548 So. 2d at 164. As such, "[u]nder equitable subrogation principles, a subrogee has no greater rights than the subrogor . . . [and] is entitled to only those remedies to which the subrogor is entitled, and *no greater remedies*." *Ex parte Webber*, 157 So. 3d 887, 897 (Ala. 2014) (emphasis added). More importantly, "[n]o new cause of action is created, because the claim of the subrogee is derivative of the claim of the subrogor, and only changes the ownership of the claim." *Id.* Put simply, because equitable subrogation creates "[n]o new cause of action" and "a subrogee has no greater rights than the subrogor," this court cannot allow an independent action—here, a standalone claim for equitable subrogation—that is otherwise unavailable to the municipalities.

### vi.  Count Seven: Indemnification

Finally, the municipalities bring an action against JCS for indemnification in the underlying lawsuits as well as costs, expenses, and legal fees. *See* doc. 1-1 at

20-21. JCS moves to dismiss this claim because they allege that no indemnity agreement exists between the municipalities and JCS and because the parties are alleged joint tortfeasors. *See* doc. 13 at 15-20. The municipalities respond by alleging that an indemnity agreement actually does exist between the parties (separate from the one in the Harpersville-JCS contract) and that, regardless, the court cannot on a motion to dismiss interpret the meaning of the indemnity provision in the Harpersville-JCS contract. *See* doc. 25 at 13. The court disagrees and finds that this claim is similarly due to be dismissed except insofar as it alleges a claim for common-law indemnification of damages.

### 1. Harpersville-JCS Contract

For the reasons discussed above, the Harpersville-JCS contract clause that JCS "shall . . . execute an indemnity agreement holding the City of Harpersville harmless for the acts of JCS employees," *see* doc. 1-2 at 3, is not enforceable. As such, this clause cannot impose an obligation upon JCS to indemnify Harpersville in the underlying actions. *See Holcim (US), Inc.*, 38 So. 3d at 726 (holding that indemnity agreements will be enforceable only when "the parties knowingly, evenhandedly, and for valid consideration, intelligently enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language") (citation and internal quotation marks omitted).

2. <u>Alleged Indemnification Agreement</u>

Based on the allegation in the municipalities' complaint that JCS is obligated "through contract and common law" to indemnify them, *see* doc. 1-1 at 21, the municipalities also "allege that they have [a separate] agreement with JCS to indemnify them and that JCS has failed to do so," *see* doc. 25 at 12. Although the municipalities argue that, with this allegation, "nothing more is required of them under Alabama law" to survive a motion to dismiss, doc. 25 at 13, they overlook that, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *See Iqbal*, 556 U.S. at 679. In that respect, this conclusory statement—that a contract existed, without more—"does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *See id.* at 678-79 (discussing Rule 8). Stated differently, the fact that the municipalities *may* have executed an indemnity agreement with JCS is simply not enough to survive a motion to dismiss. *See, e.g.*, *Franklin v. Curry*, 738 F.3d 1246, 1252 n.6 (rejecting the argument that the plaintiff's "lack of knowledge should relax the pleading standard to which she is held" and noting that "[w]hile this may mean that a civil plaintiff must do more detective work in advance, the reason is to protect society from the costs of highly unpromising litigation") (internal quotations and citations omitted). Because JCS cannot be expected to bear

the burden of discovery costs for a contract that the municipalities only speculate exists, JCS's motion to dismiss is due to be granted.

### 3.   Common-Law Indemnity

The municipalities also assert that they are entitled to common-law indemnity for damages in the underlying cases. *See* doc. 1-1 at 20-21. As a general rule, "joint tortfeasors are not entitled to common-law indemnity." *See Holcim (US)*, 38 So. 3d at 727. However, "a joint wrongdoer may claim indemnity where he has not been guilty of any fault, except technically or constructively, or where both parties are at fault, but the fault of the party from whom indemnity is claimed was the proximate or primary cause of the injury." *Crigler*, 438 So. 2d at 1385 (citations omitted). JCS disputes that the municipalities fall within this exception because, according to JCS, the allegations in the underlying complaints cast the municipalities as joint tortfeasors. *See* docs 13 at 19-20; Third Amended Complaint, *Burdette*, CV-2010-900183; Fourth Amended and Restated Complaint, *Ray*, 2:12-cv-2819-RDP. Allegations in complaints are precisely that—allegations. Until there is a finding in the underlying lawsuits that the municipalities are joint tortfeasors, the possibility remains that the municipalities are passive tortfeasors whose liability from the underlying complaints, if any, arises from actions JCS took that were purportedly beyond the scope of JCS's contracts with the municipalities. As alleged passive tortfeasors, then, the municipalities would fall

within the exception to the rule banning common-law indemnification for joint tortfeasors. Because these issues would benefit from discovery, the court will allow the indemnification claim to proceed for now. At a later point, with the benefit of discovery, JCS may again assert that the municipalities are not eligible for common-law indemnification.[11]

The court reaches a different conclusion with respect to the municipalities' claim for indemnification for their costs, expenses, and legal fees for defending against the underlying suits. *See* doc. 1-1 at 20-21. "Alabama does not permit a party to be indemnified for defending against claims premised on its own allegedly wrongful actions." *Nationwide Ret. Sols., Inc. v. PEBCO, Inc.*, 161 So. 3d 1141, 1146-47 (Ala. 2014) (internal quotations and citation omitted). Given the allegations of wrongful conduct against the municipalities in the underlying complaint—for instance, violations of the underlying plaintiffs' due process and equal protection rights as well as false imprisonment, among other claims, Third Amended Complaint at 16-19, *Burdette*, CV-2010-900183; Fourth Amended and Restated Complaint at 12-21, *Ray*, 2:12-cv-2819-RDP—the municipalities may not

---

[11] Although the court denies the motion to dismiss on the grounds JCS advanced, the parties have leave to brief whether, given the current state of the underlying proceedings, the claim for indemnification of damages is not yet ripe. *See Dig. Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) ("The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes. The doctrine seeks to avoid entangling courts in the hazards of premature adjudication.") (internal quotations and citation omitted).

be indemnified for defending against these claims. *See id.* (holding that because the "claims unquestionably encompassed [the defendant's] own allegedly wrongful acts" and because the defendant "defended those acts for its own benefit," "it may not now seek indemnification for its costs of defense"); *Stone Bldg. Co. v. Star Elec. Contractors, Inc.*, 796 So. 2d 1076, 1092 (Ala. 2000) ("[I]ndemnification, including attorney's fees, is allowed where one is defending claims predicated solely upon another defendant's negligence; however, where one is defending for his own benefit, an award of attorney fees will not be allowed."). This determination is ripe for decision on a motion to dismiss because the Alabama Supreme Court has specifically rejected arguments that "actual, as opposed to alleged, wrongdoing by the indemnitee should be required to deny indemnification" because "[t]hat position[] . . . is not the law of this State." *See id.* at 1150; *see also Jack Smith Enters. v. Northside Packing Co.*, 569 So. 2d 745, 746-7 (Ala. Civ. App. 1990) ("[T]here is considerable authority holding that an indemnitee is precluded from recovering attorney fees where the indemnitee has been required to defend accusations which encompass his own separate wrongful acts. . . . [A]ttorney fees incurred in establishing the right to indemnification or in the defense of claims of negligence are not a proper element of recovery in the indemnification."). Therefore, because in the underlying complaints the

municipalities must defend their own allegedly wrongful behavior, they are not entitled to indemnification for their defense in these cases.

Therefore, JCS's motion to dismiss the municipalities' indemnification claim is due to be granted except as to the common-law indemnification for damages.

### IV.    Cincinnati's Motion to Dismiss (Doc. 16)

Cincinnati moves to dismiss the claims brought against it in their entirety. The gravamen of Cincinnati's argument is that Plaintiffs cannot establish that the municipalities have an insurance contract with Cincinnati that imposes a duty upon Cincinnati to defend and indemnify them. *See generally* doc. 16. After careful review, the court concludes that this motion is due to be **GRANTED**.

### i.  Count Three: Breach of Contract

Harpersville and AMIC have asserted a breach of contract claim against Cincinnati for failure to defend and indemnify Harpersville "as an additional insured to JCS's insurance policies with Cincinnati." *See* docs. 1-1 at 17-18; 13-1. Cincinnati moves to dismiss this claim because Cincinnati was not party to a contract with Harpersville, as the municipality "was <u>not</u> added to the [JCS] policy as an additional insured." *See* doc. 16 at 8 (emphasis in original). The court agrees with Cincinnati that Harpersville and AMIC have failed to state a claim.

It is axiomatic that in order to advance a valid breach of contract claim, a plaintiff must show, inter alia, "the existence of a valid contract binding the parties in the action." *See, e.g.*, *Ex parte Alfa Mut. Ins. Co.*, 799 So. 2d 957, 962 (Ala. 2001) (citations omitted). To satisfy this requirement, Harpersville and AMIC baldly assert in their complaint that "Harpersville was an additional insured to JCS's insurance policies with Cincinnati," *see* doc. 1-1 at 17, and in their briefing argue that "Cincinnati cannot, without any discovery in this action, simply assert that the document it filed . . . is the only document" covering its insurance policies of the relevant parties to this action, *see* doc. 23 at 5-6.[12] These allegations, however, fall well short of the mark because that Harpersville "was an additional insured" to the contract, without more, is a quintessential "threadbare recital[] of a cause of action's elements"—here, that a contractual obligation existed— "supported by mere conclusory statements."[13] *See Iqbal*, 556 U.S. at 665 (citation

---

[12] Harpersville's and AMIC's argument that JCS's production in the underlying Childersburg case of an additional policy with Cincinnati constitutes "a disputed issue whether, among other things, the policy attached to Cincinnati's Motion to Dismiss is complete" and therefore entitles them to discovery, *see* doc. 23 at 6, is a quintessential red herring. When a document is contested at the motion to dismiss phase, the appropriate course for the court, as Harpersville and AMIC argue, is actually to disregard the documents attached to the motion to dismiss. *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (noting that "[c]onsideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion" but that no material dispute as to the relevance, authenticity, or accuracy can exist "before materials outside the record may become the basis for a dismissal"). Disregarding the attached insurance policy, then, leaves the court to consider only the allegations in the complaint which, as the court describes above, are entirely conclusory.

[13] AMIC and Harpersville also seem to argue that the clause in the Harpersville-JCS contract (which states, "JCS shall also execute an indemnity agreement holding the City of Harpersville

omitted). Unfortunately for Harpersville and AMIC, their lack of knowledge as to whether Harpersville has, in fact, been added as an additional insured cannot relax the pleading standard here; as the Eleventh Circuit has held, "[w]hile this may mean that a civil plaintiff must do more detective work in advance, the reason is to protect society from the costs of highly unpromising litigation." *Franklin*, 738 F.3d at 1252 n.6; *see also DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999). As such, "the court will not indulge [Plaintiffs in] a fishing expedition." *See Rigas v. City of Rogersville*, No. 3:12-cv-2401-CLS, 2013 WL 444379, at *5 (N.D. Ala. Jan. 31, 2013).

Because Harpersville and AMIC have not made a plausible showing that Harpersville was included as an additional insured on Cincinnati's policy, they

---

harmless for the acts of JCS employees," doc. 1-2 at 3) is further proof that a contract in which Harpersville was named as an additional insured exists. *See* doc. 23 at 7. This line of argument fails, not the least because the clause did not obligate JCS to take any further action. AMIC and Harpersville also state in their brief, without elaborating further, that "Harpersville possessed a certificate of liability insurance (which was also produced in a federal court action) that indicates that insurance exists." *See id.* As a threshold matter, the court reminds AMIC and Harpersville that "[s]tatements by counsel in briefs are not evidence." *Skyline v. Nat'l Labor Relations Bd.*, 613 F.2d 1328, 1337 (5th Cir. 1980). Even if they were, however, the court does not know what the contents of this certificate are, nor does it know to what "federal court action" AMIC and Harpersville refer; on such limited allegations, even if the court were to consider this "certificate" in its determination as to the plausible existence of a contract, the court would decline to find that the plaintiffs have made a plausible showing that a document listing Harpersville as an additional insured exists. *See Franklin*, 738 F.3d at 1252 n.6 ("'[T]he discovery process is not available where, at the complaint stage, a plaintiff has nothing more than unlikely speculations.'") (quoting *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)); *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

have failed to plead the existence of a valid contract—a determination fatal to their breach of contract claim. As such, this claim is due to be dismissed.

## ii.  Count Four: Bad Faith

Harpersville also asserts a claim for bad faith against Cincinnati for the alleged failure to "defend and indemnify Harpersville" in the underlying action against Harpersville notwithstanding that Cincinnati "had actual knowledge" of JCS's commitment in the Harpersville-JCS contract to execute an indemnity agreement for Harpersville. *See* doc. 1-1 at 18-19. In Alabama, "bad faith is the intentional failure by the *insurer* to perform [the requirement of good faith and fair dealing]." *Chavers v. Nat'l Sec. Fire & Cas. Co.*, 405 So. 2d 1, 5 (Ala. 1981) (emphasis added). To successfully assert a claim for bad faith, a plaintiff must satisfy the element requiring "an insurance contract between the parties and a breach thereof by the defendant." *See State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 257 (Ala. 2013). Moreover, Alabama courts have confined the tort of bad faith to actions arising from insurance policies and have declined to extend it further. *See Tanner v. Church's Fried Chicken, Inc.*, 582 So. 2d 449, 451 (Ala. 1991) ("We are not prepared to extend the tort of bad faith beyond the area of insurance policy cases.") (citations and internal quotation marks omitted). In light of the fact that Alabama requires a valid insurance policy to assert a bad faith claim and that, as discussed above, Harpersville cannot advance a plausible showing that

it was an additional insured on the JCS-Cincinnati policy, this claim is due to be dismissed.

### iii.  Count Five: Contribution

AMIC also asserts a claim for contribution against Cincinnati, alleging that it has a "contractual or common law indemnification responsibility to defend Harpersville and Childersburg" in the underlying suits and that AMIC is "therefore[] entitled to contribution for the defense costs" from Cincinnati. *See* doc. 1-1 at 19-20. In Alabama, insurance companies share a contribution responsibility "[w]hen two or more insurance carriers have primary insurance coverage of the same insurable interest, subject matter, and risk, they share liability in accordance with the proportion that the limits of each policy bear." *Nationwide Mut. Ins. Co. v. Hall*, 643 So. 2d 551, 561 (Ala. 1994). Here, Cincinnati disputes that AMIC and Cincinnati's share "the same insurable interest, subject matter, and risk" because it argues that neither municipality is listed as an additional insured on its insurance policies. *See* doc. 16 at 12-13. Indeed, AMIC has not advanced a plausible showing that either municipality has been listed as an additional insured on JCS's policies with Cincinnati and maintains instead that that it is entitled to discovery as to whether the municipalities are, in fact, included as an additional insured on a JCS-Cincinnati policy. *See* doc. 23 at 5-7. However, "[Rule 8] does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions." *See Iqbal*, 556 U.S. at 678-79. Therefore, because Cincinnati's insurance agreement with JCS does not list either the municipalities or AMIC, the court finds that the two insurance companies do not share the same interest, subject matter, and risk. *See Davis Constructors & Eng'rs, Inc. v. Hartford Acc. & Indemn. Co.*, 308 F. Supp. 792, 795-96 (M.D. Ala. 1968) (holding that one insurance company did not owe another contribution because the named insureds in the two policies did not overlap and "the two policies do not cover the same interest, subject matter and risk"). As such, because AMIC cannot advance a plausible showing that the municipalities are included as additional insureds on the JCS-Cincinnati policies, AMIC's claim for contribution against Cincinnati must be dismissed.

### iv.  Count Six: Equitable Subrogation

AMIC also asserts an equitable subrogation claim against Cincinnati for reimbursement in light of its defense of the municipalities in the underlying suits. *See* doc. 1-1 at 20. However, for the reasons mentioned above in the court's discussion of AMIC's action for equitable subrogation against JCS—namely, that equitable subrogation affords the subrogee "[n]o new cause of action" and because "a subrogee has no greater rights than the subrogor"—this "equitable subrogation" claim cannot survive as an independent claim and is due to be dismissed. AMIC may seek reimbursement by pursuing only those claims that its subrogors,

Harpersville and Childersburg, may pursue, as otherwise AMIC would not be seeking "reimburse[ment] for payments it made that should, in fairness, be borne by another." *See Liao*, 548 So. 2d 163, 164 (Ala. 1989).

## V.    CONCLUSION AND ORDER

To conclude, Plaintiff's motion for remand and taxation of costs, doc. 15, is **DENIED**. Cincinnati's motion to dismiss, doc. 16, is **GRANTED** in its entirety, and Cincinnati is **DISMISSED WITHOUT PREJUDICE** from this case. Finally, except for the municipalities' claim for breach of contract (Count I) and their claim for common-law indemnity for damages (Count VII), JCS's motion to dismiss, doc. 13, is **GRANTED** and those claims are accordingly **DISMISSED WITHOUT PREJUDICE**. In accordance with footnote 10, the court will give the parties leave to brief at a later date whether the common-law indemnification claim is currently ripe for adjudication before this court. The court will discuss this issue further at the Rule 16(b) Scheduling Conference. For now, the municipalities and JCS are **ORDERED** to meet and confer consistent with Federal Rule of Civil Procedure 26 and to file their report of parties' planning meeting thereafter.

**DONE** the 29th day of March, 2016.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE